Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
Amanda J. Rosenberg (SBN 278507)
*arosenberg@kalielgold.com*
**KALIEL GOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC  20005
Telephone: (202) 350-4783

Sophia G. Gold (SBN 307971)
*sgold@kalielgold.com*
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA RAMOS, on behalf of herself and all others similarly situated,<br><br>                 Plaintiff,<br><br>    vs.<br><br>EYEBUYDIRECT, INC.,<br><br>               Defendant. | Case No.: 8:25-cv-00539-JVS-DFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**(DEMAND FOR JURY TRIAL)**<br><br>Hon. James V. Selna |

1       Plaintiff Erika Ramos, on behalf of herself and all others similarly situated,

2  complains and alleges upon information and belief based, among other things, upon

3  the investigation made by Plaintiff and through her attorneys as follows:

4                                    **INTRODUCTION**

5       1.     This is a proposed class action seeking monetary damages, restitution,

6  and public injunctive and declaratory relief from Defendant EyeBuyDirect, Inc.,

7  ("EBD") arising from its deceptive addition of junk fees to consumers' shopping

8  carts.

9       2.     When consumers browse products on EBD, EBD advertises the price of

10 its retail items, along with an advertisement for either free or flat rate shipping. Those

11 pricing representations are false, however, because EBD surreptitiously adds junk

12 fees to consumer purchases, including a so-called "Shipping Protection" fee.

13      3.     As discussed in detail herein, the assessment of these fees is deceptive

14 and unfair, since: (a) EBD sneaks these fees into consumers' shopping carts using a

15 pre-selected opt-in toggle; (b) the fees are nothing more than an additional cost for

16 shipping, rendering EBD's promise for "free" or flat-rate shipping false; (c) the fees

17 themselves are deceptively named and described; and (d) the fees provide no added

18 value to consumers and reasonable consumers, like Plaintiff, would not knowingly

19 choose to pay them, absent Defendant's deception.

20      4.     Thousands of e-commerce customers like Plaintiff have been assessed

21 hidden shipping charges for which they did not bargain due to EBD's deceptive

22 tactics.

23      5.     By unfairly obscuring their true shipping costs, Defendant deceives

24 consumers and gains an unfair upper hand on competitors that fairly disclose their

25 true shipping charges. To wit, other major e-commerce sites do <u>not</u> assess such a fee.

26      6.     Plaintiff seeks damages and, among other remedies, public injunctive

27 relief that fairly allows consumers to decide whether they will pay shipping costs.

28 ///

**PARTIES**

7.     Plaintiff Erika Ramos is a citizen and resident of Santa Ana, California. Plaintiff made the purchases that are subject of this litigation while in California, and had the products that are the subject of this litigation delivered to her residence in California.

8.     Defendant EyeBuyDirect is an online retailer for eyewear including prescription and nonprescription glasses headquartered in Austin, Texas.

**JURISDICTION AND VENUE**

9.     On March 20, 2025, Defendant EBD removed this matter from Orange County Superior Court. Dkt. 1. Plaintiff does not contest EBD's removal.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.    EBD Surreptitiously Adds Fees to Consumers' Carts**

10.     Here's how EBD's deception works, using exemplar screenshots from EBD's website that, on information and belief, are similar to the screen flow Plaintiff viewed when purchasing from EBD. In the Shopping Cart of EBD's website, which is the first page of the checkout screen flow, the customer is informed that orders over a certain amount are entitled to Free Shipping. On information and belief, the exact amount that a consumer must pay to get free shipping from EBD changes from time to time. Nevertheless, there is no mention at all of an added "Shipping Protection" fee at the time consumers are first informed that orders over a certain amount qualify for free shipping. The total price displayed reflects the same:

(Image on next page)

FIRST AMENDED CLASS ACTION COMPLAINT



11. Also in the screen shown above, EBD states "Tax and Shipping Protection not included," in an attempt to make its "Shipping Protection" fee look like a government-imposed fee similar to an actual government-imposed fee like a tax. This is part of EBD's scheme to make the Shipping Protection fee appear mandatory to consumers.

12. On the second page of the checkout screen flow, after the consumer clicks the large beige "Proceed to checkout" button, the consumer is taken to another page where a "Shipping Insurance" fee that amounts to a portion of the transaction is automatically added *without the consumer doing anything at all to add the fee*:

(Image on next page)

FIRST AMENDED CLASS ACTION COMPLAINT



13.   On the third page of the checkout flow, after the address is entered, consumers are presented with large options for selecting their method of shipping. Below the shipping options, appears a tiny pre-selected toggle adding "Shipping Protection." The pre-selected toggle is so small and automatically toggled to opt the consumer in, intentionally designed to go unnoticed by consumers, and engineered to force consumers to affirmatively opt-out of the junk fee in order to avoid it:



FIRST AMENDED CLASS ACTION COMPLAINT

14.    By the time the consumer enters the fourth page of the checkout flow, the deception is sealed. The Shipping Insurance cannot be removed from the cart. Thus, if consumers even notice the very small amount added to their transactions, consumers are still left entirely unaware that the added "Shipping Insurance" charge is optional, because it is presented in the cart as mandatory. Indeed, this was EBD's very intention by strategically lumping actual government-imposed taxes and Shipping Insurance together in both the first screen and once again as line items placed beside each other on this final screen:



15.    This pre-selection and automatic opting in of consumers to junk fees is itself deceptive.

16.    In fact, in recognition of EBD's former deceptive practice, since the filing of this lawsuit, EBD has *turned off* the pre-selection of its Shipping Protection fee. Now consumers must affirmatively select the toggle to purchase Shipping

FIRST AMENDED CLASS ACTION COMPLAINT

1 | Insurance.

2 |   17.   On information and belief, the screen-flow depicted above is the same

3 | regardless of the product purchased by a consumer.

4 |   18.   As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-

5 | mortar retailers have used ***design tricks and psychological tactics such as pre-***

6 | ***checked boxes***, hard-to-find-and read disclosures, and confusing cancellation

7 | policies, to get consumers to give up their money or data." *FTC Report Shows Rise in*

8 | *Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15,*

9 | *2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-

10 | report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-

11 | consumers)(emphasis added).

12 |   19.   The FTC further notes in its *Enforcement Policy Statement Regarding*

13 | *Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute**

14 | **affirmative                                                                 consent."**

15 | https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_opt

16 | ion_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

17 |   20.   This method of adding on fees is designed to go undetected by

18 | consumers and thus provide additional revenue to EBD.  The Wall Street Journal

19 | recently highlighted the problem, stating:

20 |   Some brands automatically add optional coverage to orders. ***Customers***
   ***have complained the fees are disclosed in small fonts, made to appear***
21 |   ***mandatory when they are not or are displayed late in the online***
   ***checkout process***.
22 |

23 | Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, Wall

24 | Street Journal, December 25, 2024, available at https://www.wsj.com/personal-

25 | finance/package-theft-hidden-fee-higher-prices-

26 | 325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

27 |   21.   Upon information and belief, EBD is aware that by programming its

28 | website to automatically opt in consumers to "Shipping Protection" fees, most

1 | consumers will unknowingly purchase the protection. On information and belief,
2 | EBD is further aware that had it programmed its website to offer *optional* Shipping
3 | Protection (requiring an opt-in, as it has since the filing of the lawsuit), the vast
4 | majority of consumers would not purchase it.

5 |   22. Because EBD's practice is deceptive, Shopify, which handles the
6 | technology infrastructure for many direct-to-consumer brands and larger companies,
7 | started banning this pre-selection from retail purchases in February of 2025.

8 |   23. This ban is too little, too late, to help the hundreds of thousands of
9 | consumers already deceived and exploited like Plaintiff.

10 | **II. The Add On Fees Render Promises of Free or Flat Rate Shipping False**

11 |   24. Even beyond the deceptive manner in which the fees are added, the fees
12 | themselves are additionally deceptive because they directly contradict other promises
13 | on EBD's website regarding "free" or flat-rate shipping. That is because EBD's add
14 | on fees are, in actuality, a disguised shipping charge.

15 |   25. Whatever the Shipping Protection fee is for—and as described herein, it
16 | is totally unclear—it is a fee somehow related to shipping of the products purchased
17 | by consumers.

18 |   26. But as described herein, EBD promised "free" shipping on certain orders
19 | and flat rate shipping on other orders. These were clear promises that the total,
20 | marginal cost of having products shipped—that is, moved from the retailer to the
21 | consumer—was represented by the "free" or flat rate shipping price promise.

22 |   27. However, Defendant decided it could actually charge more for shipping,
23 | thereby increasing profitability, by misrepresenting the true shipping costs to
24 | consumers.

25 |   28. Defendant was or should have been aware that consumers were and
26 | would be deceived by an add-on shipping fee at the same time as a promise of "free"
27 | or flat-rate shipping was being made.

28 |   29. Because it is well known that American consumers prefer free or low-

8

1  cost shipping costs, Defendant made an intentional decision to break shipping costs
2  into two parts and thus disguise their decision to charge more for shipping.

3      30.    The deceptively added Shipping Protection fee is a hidden shipping fee.
4  This renders false EBD's promise of a FREE or a flat, low-cost shipping fee.

5      31.    By unfairly obscuring its charges to consumers, Defendant deceives
6  consumers and gains an unfair upper hand on competitors.

7      32.    In addition to the manner in which the fees are added and the fact that
8  the added fees render other "free" or flat rate shipping promises false and deceptive,
9  Defendant's fees are nonsense fees that provide little or no value to consumers.

10 **III.  Defendant's "Shipping Protection" Fee Is Inaccurately Named and**
11     **Described and Provides No Added Value to Consumers.**

12     33.    Even beyond the deceptive manner in which the fees are added and the
13 fact that fees themselves directly contradict other promises on e-commerce retailer
14 websites regarding "free" or flat-rate shipping, the "Shipping Protection" fees are also
15 deceptively named and described.

16     34.    First, the fee provides little or no *additional* "protection" for shipments
17 than already exists. Online retailers like EBD already provide replacements and allow
18 for returns of products. Indeed, EBD offers 14 day returns on its website for all items,
19 including those that arrive damaged. See https://www.eyebuydirect.com/shipping-
20 and-returns (last accessed February 7, 2025). Therefore, the Shipping Protection fee
21 provides no extra protection for goods that arrive damaged. Defendant misrepresents,
22 and omits material facts about, that truth.

23     35.    EBD further confuses what the product is by interchangeably calling the
24 product either "Shipping Insurance" or "Shipping Protection."

25     36.    Moreover, popular shipping services like UPS, Federal Express, USPS
26 Priority Mail *automatically* include shipping protection for the first $100 worth of
27 value in a package when goods are not delivered, stolen or damaged. Defendant
28 misrepresents, and omits material facts about, that truth, too. Thus, for the vast

FIRST AMENDED CLASS ACTION COMPLAINT

1  majority of consumers—those who are paying to ship a product less than $100— the

2  "Shipping Protection" is entirely worthless, because they are already provided the

3  same protection by the shippers.

4      37.    Additionally, in the event goods are not delivered, stolen or damaged,

5  consumers, can report the issue to their credit card company or bank, who will often

6  reverse the charge.

7      38.    For all these reasons, the Shipping Protection Fee is deceptively named

8  and described.

9      39.    Even beyond the deceptive manner in which the fees are added, the fact

10 that fees themselves directly contradict other promises on e-commerce retailer

11 websites regarding "free" or flat-rate shipping, and the fact that the "Shipping

12 Protection" fees are deceptively named and described, they also provide virtually no

13 additional value to consumers. No reasonable consumer would knowingly elect to

14 pay for the "Shipping Protection" fee because it provides essentially zero additional

15 value to consumers.

16     40.    As described above, damaged goods may already be returned to the

17 retailer; third party shipping services like USPS, UPS and FedEx already provide

18 some insurance coverage; and lost or stolen packages can be reported to credit card

19 companies for chargebacks. Accordingly, the additional fee serves no purpose.

20 **IV.  Defendant's Fees are Junk Fees and Violate Federal Guidance and**

21     **California Law**

22     41.    Even worse, on information and belief, EBD actually only pays the

23 purported Shipping Insurance company Route about half of what EBD's customers

24 pay. The other half is retained by EBD as pure profit.

25     42.    Defendant's shipping fees, such as the Shipping Protection fee, are

26 precisely the type of "Junk Fee" that have come under government scrutiny in recent

27 years:

28     Junk fees are fees that are mandatory but not transparently disclosed to
      consumers. Consumers are lured in with the promise of a low price, but

FIRST AMENDED CLASS ACTION COMPLAINT

1    when they get to the register, they discover that price was never really
     available. Junk fees harm consumers and actively undermine
2    competition by making it impractical for consumers to compare prices, a
     linchpin of our economic system.
3

4    The White House, <u>The Price Isn't Right: How Junk Fees Cost Consumers and</u>

5    <u>Undermine        Competition,</u>        March        5,        2024,        available        at

6    https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-

7    how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

8        40.    As the Federal Trade Commission said recently in its effort to combat

9    Junk Fees:

10       [M]any consumers said that sellers often do not advertise the total
         amount they will have to pay, and disclose fees only after they are well
11       into completing the transaction. They also said that sellers often
         misrepresent or do not adequately disclose the nature or purpose of
12       certain fees, leaving consumers wondering what they are paying for or if
         they are getting anything at all for the fee charged.
13

14   Federal Trade Commission, <u>FTC Proposes Rule to Ban Junk Fees – Proposed rule</u>

15   <u>would prohibit hidden and falsely advertised fees,</u> October 11, 2023, available at

16   https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-

17   junk-fees.

18       42.    In its 2013 publication ".com Disclosures: How to Make Effective

19   Disclosures in Digital Advertising," the FTC makes clear that when advertising and

20   selling are combined on a website, and the consumer will be completing the

21   transaction online, the disclosures should be provided before the consumer makes the

22   decision to buy – for example, before the consumer "add[s] to shopping cart." *See*

23   Fed. Trade Comm'n, <u>.com Disclosures: How to Make Effective Disclosures iN</u>

24   <u>Digital    Advertising</u>    at    ii,    14    (Mar.    2013),    available    at

25   https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-

26   online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

43.    Defendant violates federal guidance and California law by adding the shipping fees as line items well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

**V.    Plaintiff's Experience**

44.    Plaintiff purchased merchandise from EBD's website eyebuydirect.com on May 15, 2023, February 14, 2023, and May 9, 2021.

45.    Plaintiff is informed and believes that on each of the above referenced dates that she purchased from eyebuydirect.com, she viewed a screen flow similar to the screen flow displayed above.

46.    When viewing eyebuydirect.com on May 15, 2023, February 14, 2023, and May 9, 2021, Plaintiff was repeatedly informed that she would get free shipping as part of her purchase. Plaintiff relied on EBD's promise to provide free shipping in making each of her purchases.

47.    However, each of her three purchases included a small dollar amount Shipping Insurance fee that was automatically and surreptitiously added to her cart via the pre-selected toggle, that—for the reasons described above—in fact represented an additional shipping charge. On May 15, 2023, Plaintiff was charged $3.12 for Shipping Insurance. On February 14, 2023, Plaintiff was charged $1.42 for Shipping Insurance. On May 9, 2021, Plaintiff was charged $1.18 for Shipping Insurance.

48.    On each occasion that Plaintiff purchased from eyebuydirect.com, Plaintiff did not see the Shipping Insurance charge, did not know the Shipping Insurance charge existed, and did not know that the Shipping Insurance charge could be removed prior to her purchase.

49.    Plaintiff would not have purchased Shipping Insurance if she knew it was optional.

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

1

## CLASS ALLEGATIONS

2      50.    Plaintiff brings this action on behalf of herself, and all others similarly

3    situated persons. The proposed classes are defined as:

4           All consumers who, within the applicable statute of limitations
            preceding the filing of this action to the date of class certification,
5           paid a Shipping Protection fee or other similar fee for a purchase
            on EBD.
6

7      51.    In addition to the proposed nationwide Class, Plaintiff also brings this

8    action on behalf of a California subclass.

9      52.    Excluded from the Classes are Defendant, any entities in which they

10   have a controlling interest, any of their parents, subsidiaries, affiliates, officers,

11   directors, employees and members of such persons' immediate families, and the

12   presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand,

13   limit, modify, or amend this class definition, including the addition of one or more

14   subclasses, in connection with her motion for class certification, or at any other time,

15   based upon, *inter alia,* changing circumstances and/or new facts obtained during

16   discovery.

17     53.    Plaintiff reserves the right to modify or amend the definition of the

18   proposed Classes and/or add a subclass(es), if necessary, before this Court determines

19   whether certification is appropriate.

20     54.    The questions here are ones of common or general interest such that

21   there is a well-defined community of interest among the members of the Class. These

22   questions predominate over questions that may affect only individual class members

23   because Defendant has acted on grounds generally applicable to the Class. Such

24   common legal or factual questions include, but are not limited to:

25           a.    Whether Defendant's alleged misconduct misled or had the

26                 tendency to mislead consumers;

27           b.    Whether Defendant engaged in unfair, unlawful, and/or fraudulent

28                 business practices under the laws asserted;

FIRST AMENDED CLASS ACTION COMPLAINT

      c.     Whether Defendant's alleged conduct constitutes violations of the laws asserted;

      d.     Whether Defendant breached its contract with consumers;

      e.     Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

      f.     Whether Defendant was unjustly enriched;

      g.     Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

      h.     Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

54.    The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

55.    It is impracticable to bring members of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

FIRST AMENDED CLASS ACTION COMPLAINT

56.     Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein.

57.     Plaintiff is more than adequate representative of the Class in that Plaintiff is Defendant's customer and has suffered damages as a result of Defendant's misrepresentations. In addition:

    a)     Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

    b)     There is no conflict of interest between Plaintiff and the unnamed members of the Class;

    c)     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d)     Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

58.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

59.     Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

60.     All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

61.     Plaintiff hereby incorporates by reference the preceding paragraphs.

62.     Defendant's conduct described herein violates the Unfair Competition

FIRST AMENDED CLASS ACTION COMPLAINT

1   Law ("UCL"), codified at California Business and Professions Code section 17200, *et*
2   *seq*.

3       63.    The UCL prohibits, and provides civil remedies for, unfair competition.
4   Its purpose is to protect both consumers and competitors by promoting fair
5   competition in commercial markets for goods and services. In service of that purpose,
6   the Legislature framed the UCL's substantive provisions in broad, sweeping
7   language.

8       64.    The UCL imposes strict liability. Plaintiff need not prove that Defendant
9   intentionally or negligently engaged in unlawful, unfair, or fraudulent business
10  practices—but only that such practices occurred.

11      65.    A business act or practice is "unfair" under the UCL if it offends an
12  established public policy or is immoral, unethical, oppressive, unscrupulous, or
13  substantially injurious to consumers, and that unfairness is determined by weighing
14  the reasons, justifications, and motives of the practice against the gravity of the harm
15  to the alleged victims.

16      66.    A business act or practice is "fraudulent" under the UCL if it is likely to
17  deceive members of the public.

18      67.    A business act or practice is "unlawful" under the UCL if it violates any
19  other law or regulation.

20      68.    Defendant committed unfair and fraudulent business acts and practices
21  in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and
22  knowingly (a) sneaking fees into consumers carts using a pre-selected toggle; (b)
23  deceptively naming and describing the fees; (c) the fees are in actuality simply the
24  price involved in the shipping process; and (d) charging fees that provide no added
25  value to reasonable consumers.

26      69.    Defendant's acts and practices offend an established public policy of
27  truthful advertising in the marketplace, and constitute immoral, unethical, oppressive,
28  and unscrupulous activities that are substantially injurious to consumers.

70.    The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

71.    Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

72.    Defendant's business practices have misled Plaintiff and the proposed Class and, unless enjoined, will continue to mislead them in the future.

73.    Plaintiff relied on Defendant's misrepresentations in making her purchase.

74.    By falsely marketing their shipping fee practices, Defendant deceived Plaintiff and class members into making purchases they otherwise would not make.

75.    As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

76.    As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

77.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

**SECOND CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

78.    Plaintiff hereby incorporates by reference the preceding paragraphs if fully restated here.

79.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

80.    Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

81.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

82.    Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

83.    Further, Plaintiff requests an order awarding Plaintiff and class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

84.    Additionally, Plaintiff and class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

///

1

## THIRD CLAIM FOR RELIEF
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq*.
### (On Behalf of Plaintiff and the California Subclass)

85.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

86.     This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of merchandise and shipping insurance to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The merchandise purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

87.     Defendant violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of merchandise:

       a.     "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

       b.     "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

       c.     "Advertising goods or services with intent not to sell them as advertised" (a)(9);

       d.     "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14); and

       e.     "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited

19

FIRST AMENDED CLASS ACTION COMPLAINT

1    to, shelf tags, displays, and media advertising, in a size larger than

2    any other price in that advertisement, and (B) the specific price

3    plus a specific percentage of that price represents a markup from

4    the seller's costs or from the wholesale price of the product"

5    (a)(20).

6    88.    Specifically, Defendant (a) deceptively added fees into consumers carts

7    using a pre-selected toggle; (b) deceptively named and described the add-on fees; (c)

8    charged Plaintiff and class members for shipping above and beyond what was

9    promised to them; and (d) charged fees that provide no added value to reasonable

10    consumers.

11    89.    Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified

12    Defendant in writing by certified mail of the particular violations of §1770 of the

13    CLRA and demanded that it rectify the problems associated with the actions detailed

14    above and give notice to all affected consumers of Defendant's intent to act.

15    Defendant failed to respond to Plaintiff's letter and/or failed to agree to rectify the

16    problems associated with the actions detailed above. Thus, Plaintiff is also pursuing

17    claims for actual, punitive and statutory damages, as appropriate against Defendant.

18    90.    Plaintiff also seeks public injunctive relief, as described above.

19    91.    Plaintiff's rights under the CLRA cannot be waived by any choice-of-

20    law provision of EBD's per §1751 of the CLRA.

21    **FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**

22    **(On Behalf of Plaintiff and the Classes)**

23    92.    Plaintiff repeats, realleges, and incorporates by reference each of the

24    foregoing paragraphs as if fully set forth herein.

25    93.    To the detriment of Plaintiff and the Class, Defendant has been, and

26    continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

27    94.    Plaintiff and the Class conferred a benefit on Defendant.

28

20

FIRST AMENDED CLASS ACTION COMPLAINT

95.    Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

96.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

97.    Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### FIFTH CLAIM FOR RELIEF
#### Breach of Contract
#### (On Behalf of Plaintiff and the Class)

98.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

99.    Plaintiff and Defendant have contracted for the purchase of merchandise.

100.    No contract provision authorizes Defendant to be able to charge add on fees to customers.

101.    Defendant breached the terms of its contract with consumers by charging add on fees such as the Shipping Protection fee.

102.    Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

103.    Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class demands a jury trial on all claims so triable and judgment as follows:

(a)    Certification for this matter to proceed as a class action on behalf of the Class;

FIRST AMENDED CLASS ACTION COMPLAINT

(b)   Declaring Defendant's shipping fee practices and policies to be improper;

(c)   For declaratory and injunctive relief as set forth above;

(d)   For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(e)   For compensatory damages according to proof;

(f)   For reasonable attorneys' fees and costs of suit;

(g)   For pre-judgment interest; and

(h)   Awarding such other and further relief as this Court deems just, proper and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: May 12, 2025          **KALIELGOLD PLLC**

By:*/s/ Amanda J. Rosenberg*
    Amanda J. Rosenberg
    Jeffrey D. Kaliel
    Sophia G. Gold
    *Attorneys for Plaintiff and the Putative Class*