UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | 8:25-cv-00539-JVS-DFM | Date August 27, 2025 |
| Title | Erika Ramos v. EyeBuyDirect, Inc. | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Defendant's Motion to Dismiss [20] and Motion to Strike [23]**

Before the Court is Defendant EyeBuyDirect, Inc.'s ("EBD") motion to dismiss, (MTD, Dkt. No. 20), and motion to strike, (MTS, Dkt. No. 23). Plaintiff Erika Ramos ("Ramos") opposed both motions. (MTD Opp'n, Dkt. No. 25; MTS Opp'n Dkt. No. 26.) EBD replied. (MTD Reply, Dkt. No. 29; MTS Reply, Dkt. No. 28.) The Court heard oral argument on this matter on August 25, 2025. (Minutes, Dkt. No. 33.)

For the following reasons, the Court **GRANTS** the motion to dismiss, in part, and **DENIES** the motion to dismiss, in part. The Court also **DENIES** the motion to strike.

## I. BACKGROUND

The following factual allegations are taken from Ramos's First Amended Complaint ("FAC"). (FAC, Dkt. No. 16.)

Ramos alleges that EBD deceptively added "junk fees" to consumers' online shopping carts through its website, eyebuydirect.com. (Id. ¶ 1.) Ramos explains the alleged process in detail. When a customer visits EBD's website, and their order is over a certain price, the website informs the customer that they qualify for free shipping. (Id. ¶ 10.) However, the customer is also informed at this time that "Tax and Shipping Protection [are] not included." (Id. ¶ 11.) According to Ramos, this wording makes customers believe that "Shipping Protection" is a "government-imposed fee" like tax and is, therefore, "mandatory to customers." (Id.)

When the customer attempts to check-out and purchase their items, a "Shipping

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |
|---|---|---|---|

| Title | Erika Ramos v. EyeBuyDirect, Inc. |
|---|---|

Insurance" fee is automatically added to the customer's shopping cart without the customer taking any action to add the fee. (Id. ¶ 12.)  Next, once the customer enters their shipping address and is presented with shipping options, "a tiny pre-selected toggle adding 'Shipping Protection'" appears.  (Id. ¶ 13.)  If the customer does not un-select the small, "pre-selected toggle," the customer is charged a "Shipping Protection" fees without taking any action.  (Id.)  Finally, once the customer enters the final page of the checkout flow, the "Shipping Insurance" fee cannot be removed from the cart.  (Id. ¶ 14.)  Thus, Ramos claims that the Shipping Insurance is presented to the customer as "mandatory."  (Id.)  The "Shipping Insurance" fee is also placed below the government-imposed tax as line-items in the order total, which further bolsters the idea that these fees are "mandatory."  (Id.)

According to Ramos, these fees "are nothing more than an additional cost for shipping," which renders EBD's promises for free or flat-rate shipping false.  (Id.)  The fees supposedly provide no additional protection for shipments that arrive damaged because  "EBD offers 14 day returns on its website for all items, including those that arrive damaged."  (Id. ¶ 34)  Further, popular shipping services, such as UPS, Federal Express, and USPS Priority Mail "*automatically* include Shipping Protection for the first $100 worth of value in a package when goods are not delivered, stolen or damaged." (Id. ¶ 36 (emphasis in original).)  Finally, Ramos claims, on information and belief, that "EBD actually only pays the purported Shipping Insurance company Route about half of what EBD's customers pay.  The other half is retained by EBD as pure profit."  (Id. ¶ 41.)  Thus, Ramos characterizes these fees as "junk fees."  (Id. ¶ 42.)

Ramos purchased products from EBD's website on May 15, 2023, February 14, 2023, and May 9, 2021.  (Id. ¶ 44.)  Ramos alleges that, during these purchases, she was "repeatedly informed that she would get free shipping as part of her purchase," and relied on this information when making her purchase.  (Id. ¶ 46.)  However, on May 15, 2023, Ramos was charged $3.12 for Shipping Insurance, on February 14, 2023, she was charged $1.42 for Shipping Insurance, and on May 9, 2021, she  was charged $1.18 for Shipping Insurance.  (Id. ¶ 47.)  Further, Ramos claims that she "did not see the Shipping Insurance charge, did not know the Shipping Insurance charge existed, and did not know that the Shipping Insurance charge could be removed prior to her purchase."  (Id. ¶ 48.)  According to Ramos, she would not have purchased the Shipping Insurance if she knew it was optional.  (Id. ¶ 49.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:25-cv-00539-JVS-DFM                    Date    August 27, 2025

Title    Erika Ramos v. EyeBuyDirect, Inc.

Ramos brings claims for: (1) violation of California's Unfair Competition Law ("UCL"), (2) violation of California's False Advertising Law ("FAL"), (3) violation of California's Consumer Legal Remedies Act ("CLRA"), (4) unjust enrichment, and (5) breach of contract. (See id., generally.) Ramos also seeks declaratory and injunctive relief. (Id.)

## II. LEGAL STANDARD

### 1. *Motion to Dismiss*

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept "all well-pleaded" factual allegations as true, and construe such allegations "in the light most favorable to the non-moving party." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### 2. *Motion to Strike*

Under Federal Rules of Civil Procedure 12(f), a court "may strike from a pleading. . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Immaterial matters have "no essential or important relationship to the claim for relief."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:25-cv-00539-JVS-DFM                    Date    August 27, 2025

Title    Erika Ramos v. EyeBuyDirect, Inc.

Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517, 534 (1994).

Class allegations are generally not tested at the pleadings stage and instead are usually tested after one party has filed a motion for class certification. See, e.g., Thorpe v. Abbott Labs., Inc., 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007).  However, as the Supreme Court has explained, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Thus, a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained.  See, e.g., Sanders v. Apple, Inc., 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009).

The granting of such motions is rare before class certification.  See Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011).  More often, courts conclude that preemptive motions to strike class allegations "are more properly decided on a motion for class certification, after the parties have had an opportunity to conduct class discovery and develop a record." Id.  (internal quotation marks and citation omitted).

## III. DISCUSSION

1.    *Request for Judicial Notice*

EBD filed a Request for Judicial Notice ("RJN") in support of its motion.  (RJN, Dkt. No. 21.)  Specifically, EBD seeks judicial notice of:

1.    The Order Granting Motion to Dismiss Without Prejudice Based on Forum Non Conveniens (the "Order") issued by the Honorable Haydee Vargas of the Superior Court of the State of Washington King County (the "Washinton Court") in *Henley v. EyeBuyDirect, Inc.*, No. 25-2-06428-0 SEA ("*Henley*") on June 6, 2025, (RJN, Ex. 1); and

2.    The transcript of the Washington Court's June 6, 2025 oral findings and rulings in *Henley*, (Id., Ex. 2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |
| --- | --- | --- | --- |

| Title | Erika Ramos v. EyeBuyDirect, Inc. |
| --- | --- |

Because factual challenges have no bearing under Rule 12(b)(6), generally, the Court may not consider material beyond the pleadings in ruling on a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds, Galbraith v. Cnty. of Santa Clara, 307 F. 3d 1119, 1125 (9th Cir. 2002). There are, however, three exceptions to this rule that do not demand converting the motion to dismiss into one for summary judgment. Id. First, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record, but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (citing Lee, 250 F.3d at 689); see Fed. R. Evid. 201(b). Second, the Court may take judicial notice of documents attached to or "properly submitted as part of the complaint." Lee, 250 F.3d at 688. Third, if the documents are "not physically attached to the complaint," they may still be considered if the documents' "authenticity . . . is not contested" and the documents are necessarily relied upon by the complaint. Id.; United States v. Corinthian Colleges, 655 F.3d 984, 998–99 (9th Cir. 2011). "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint" and cannot be incorporated by reference. Khoja, 899 F.3d at 1002.

The Court did not find either of the two exhibits helpful or material to its analysis regarding the motion to dismiss. Consequently, the Court declines to take judicial notice of these exhibits for the purposes of the present motion.

In addition to the RJN, EBD filed a declaration on behalf of Leo Liu with three attachments and various website screenshots. (Declaration of Leo Liu ("Liu Decl."), Dkt. No. 22.) However, EBD has not requested that the Court take judicial notice of this information, and Ramos has pointed to inaccuracies in the declaration and corresponding exhibits.[1] (MTD Opp'n at 4.) Further, given the Court's analysis of Ramos's pleadings below, the information included in the declaration does not sufficiently contradict the

---

[1] EBD admits that one of its Exhibits was obtained from the Wayback machine at a date prior to the relevant dates in the FAC. (MTD Reply, at 26.) However, EBD claims that Ramos "does not argue that the page changed in any way between July 5, 2022, and the relevant period." (Id.) The Court is unpersuaded by this argument. Because the website page included in the Liu declaration does not correspond with a time period relevant to Ramos's claims, the website page is not incorporated by reference in the FAC and, thus, judicial notice is improper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:25-cv-00539-JVS-DFM                    Date    August 27, 2025

Title    Erika Ramos v. EyeBuyDirect, Inc.

pleadings. In any event, the information is outside the record for present purposes. Thus, the Court declines to consider the Liu declaration in its analysis of the present motion.

2.    *Choice of Law*

As a threshold matter, EBD claims that this Court should dismiss Ramos's California law claims because Ramos assented to EBD's Terms of Use, which state that Texas law governs all website-related claims between customers and EBD.[2] (MTD at 21.)

Federal courts sitting in diversity apply the procedural choice-of-law rules of the forum state. Alaska Airlines, Inc. v. United Airlines, Inc., 902 F.2d 1400, 1402 (9th Cir.1990). In California, "[w]hen the parties have an agreement that another jurisdiction's law will govern their disputes, the appropriate analysis for the trial court to undertake is set forth in" Nedlloyd Lines B.V. v. Superior Ct., 3 Cal. 4th 459, 465 (1992). Washington Mutual Bank, FA v. Superior Ct., 24 Cal. 4th 906, 914–15 (2001). "As a threshold matter, a court must determine 'whether the chosen state has a substantial relationship to the parties or their transaction, or . . . whether there is any other reasonable basis for the parties' choice of law.'" Ruiz, 667 F.3d at 1323 (quoting Nedlloyd Lines, 3 Cal. 4th at 466). "If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California." Nedlloyd Lines, 3 Cal. 4th at 466. "If there is no such conflict, the court shall enforce the parties' choice of law." Id. "If . . . there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .'" Id. (quoting Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1971)). "If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance [California courts] will decline to enforce a law contrary to [the] state's fundamental policy." Id.

    a.    Substantial Relationship or Reasonable Bases

---

[2] Because EBD's arguments relate only to Ramos's CLRA, FAL, and UCL claims, the Court does not engage in a detailed choice-of-law analysis in relation to Ramos's breach of contract and unjust enrichment claims. (See MTD at 21.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:25-cv-00539-JVS-DFM                      Date    August 27, 2025

Title    Erika Ramos v. EyeBuyDirect, Inc.

The parties do not dispute that, because EBD's headquarters are allegedly in
Texas, (FAC ¶ 8), Texas has a substantial relationship to the transactions at issue.  (MTD
at 22; MTD Opp'n at 14.)

Accordingly, the Court next considers whether Texas law conflicts with a
fundamental California policy.

b.    Existence of Conflict in Fundamental Public Policy

EBD claims that Ramos's California law claims are all covered by the Texas
Deceptive Trade Practices Act ("DTPA").  (MTD at 23.)  EBD relies on Brazil v. Dell
Inc., 585 F. Supp. 2d 1158 (N.D. Cal. 2008) for this contention.  (Id.)  In Brazil, the
plaintiffs brought claims under California's FAL, UCL, and CLRA against the defendant
for allegedly "advertising false discounts from false former prices, false 'free' offers, and
false rebate discounts" on its products.  Id. at 1161.  The parties' transactions were
governed by a Texas choice-of-law clause.  Id.  The court ultimately determined that the
application of Texas law to the facts of the case would not be contrary to a fundamental
California policy and, thus, dismissed plaintiffs' FAL, UCL, and CLRA under California
law.  Id.

The Brazil court held that, although Texas law does not have an identical
provision to California's FAL and UCL, the DTPA contains a similar provision which
prohibits "making false or misleading statements of fact concerning the reason for,
existence of, or amount of price reductions."  Id.  at 1162 (citing Tex. Bus. & Com. Code
§ 17.46(b)(11)).  Specifically, the plaintiffs' claims under the FAL and UCL were
premised on the allegations that the defendant misrepresented the former price of its
products in offering discounts, falsely offered "free" promotional items when the price of
those items were already built into the sales price, and offered "illusory rebates."  Id. at
1163.  According to the court, because these acts are also protected under Section
17.46(b)(11) of the DTPA, "there is no conflict between those states' laws . . ."  Id.; see
Tex. Bus. & Com. Code § 17.46(b)(11).

The Court finds that, like the claims in Brazil, Ramos's FAL, UCL, and CLRA
claims each fall under provisions of the DTPA.  Ramos's claims rest on the allegations
that EBD knowingly "[snuck] fees into consumers['] carts using a pre-selected toggle,"
which were deceptively named and "provide[d] no added value to reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |
|---|---|---|---|

| Title | Erika Ramos v. EyeBuyDirect, Inc. |
|---|---|

consumers." (FAC ¶ 68, 88.) These allegations are covered under Section 17.46(b)(9) of the DTPA, which prohibits "advertising goods or services with intent not to sell them as advertised," and Section 17.46(b)(24), which prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction . . . [with the intent] to induce the consumer into a transaction . . ." Tex. Bus. & Com. Code § 17.46(b)(9), (b)(24).[3] Further, the FAC cites to Cal. Civ. Code § 1770(a)(3), (a)(5), (a)(9), (a)(14), which have analogous provisions under the DTPA in Tex. Bus. & Com. Code § 17.46(b)(3), (b)(5), (b)(9), and (b)(12), respectively. (FAC ¶ 87.) Thus, the Court finds that Ramos's California law claims fall under provisions of the DTPA.

Despite the analogous provisions, the Court must still determine whether the protections provided under the DTPA are contrary to a fundamental California policy. According to Ramos, while the CLRA and DTPA contain many similar provisions, there are fundamental differences between the two states' laws which preclude the application of Texas law in this case. (MTD Opp'n at 15 (Kabbash v. Jewelry Channel, Inc. USA, No. A-16-CA-212-§, 2017 WL 2473262, at *4 (W.D. Tex. June 7, 2017)).)

First, Ramos claims that, pursuant to the CLRA's anti-waiver provision, the choice-of-law clause "is void and unenforceable as a matter of law." (Id. at 13.) However, in Brazil, the court expressly rejected the argument that "the application of any law other than the CLRA results in a violation of the CLRA's anti-waiver provision." 585 F. Supp. 2d at 1164. Thus, pursuant to the court's analysis in Brazil, the CLRA's anti-waiver provision does not invalidate the choice-of-law clause in this case.

Second, Ramos claims that the DTPA requires classwide proof of reliance, while the CLRA does not. (MTD Opp'n at 15.) Accordingly, Ramos argues that "DTPA claims are generally not certifiable, while CLRA claims are." (Id.) However, in Brazil, the court rejected this same argument. 585 F. Supp. 2d at 1164–65. Specifically, while Texas has an express reliance requirement, California courts permit classes to proceed on allegations of "material representation." Id. at 1164. The court held that, although Texas law states the reliance issue "differently," it "does not appear to altogether preclude class

---

[3] Tex. Bus. & Com. Code § 17.46(b)(24) mirrors California's FAL, which prohibits untrue or misleading advertising "as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised." Cal. Bus. & Prof. Code § 17500.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |
|---|---|---|---|

| Title | Erika Ramos v. EyeBuyDirect, Inc. |
|---|---|

certification based upon the reliance requirement." Id. at 1165. Further, in a class action setting, "California courts do not appear to apply the materiality requirement in a significantly different manner from the Texas courts." Id. Accordingly, the court held that "the CLRA and DTPA [do not] materially differ with respect to a reliance requirement." Id.

Further, the court held that, even assuming there was a material difference between the two states' laws, the DTPA's express reliance requirement does not fundamentally conflict with California's public policy. Id. at 1165-66. Specifically, the public policy underlying the CLRA is "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Id. (citing Cal. Civ. Code § 1760). According to the Brazil court, "an express reliance requirement does not itself undermine consumer protection against unfair and deceptive business practices." Id. at 1166. Additionally, even if the FAL, UCL, and CLRA embody a more generally public policy—"that '[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society'"—the court found that the "DTPA provides comparable protection." Id. (quoting Vasquez v. Superior Court, 4 Cal.3d 800, 808, 94 Cal.Rptr. 796, 484 P.2d 964 (1971)). Thus, "'[t]he mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law.'" Id. (citation omitted).

Although the court's analysis in Brazil seems to solve most of Ramos's arguments in favor of enforcing the choice-of-law provision, Ramos makes a few additional arguments which were not discussed by the Brazil court. For example, Ramos argues that the DTPA does not permit punitive damages while the CLRA does. (MTD Opp'n at 16.) Further, Ramos states that "the CLRA has a floor of $1,000 for all class action damages awards while the Texas DTPA has no floor." (Id.) Finally, Ramos argues that the DTPA has a two-year statute of limitations while the CLRA has a three-year statute of limitations. (Id. at 15.) Thus, because applying Texas law would limit the rights of potential California class members, Ramos argues that enforcement of the choice-of-law clause would violate California's fundamental public policy. (Id. at 15–16.)

The Court finds that, although the DTPA does not allow for punitive damages, it does allow for additional treble damages if the defendant committed the conduct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:25-cv-00539-JVS-DFM              Date   August 27, 2025

Title   Erika Ramos v. EyeBuyDirect, Inc.

knowingly or intentionally, which fulfills the same fundamental public policy as punitive damages.  See Tex. Bus. & Com. Code § 17.50(b)(1).  Thus, there is no fundamental conflict with California law based on the lack of punitive damages.

However, the Court is persuaded that the difference in the statute of limitations under the DTPA and  CLRA, UCL, and FAL results in a fundamental conflict that is contrary to California policy.  Specifically, while the DTPA has a two-year statute of limitations, Tex. Bus. & Com. Code § 17.565, California's CLRA and FAL have three-year statutes of limitations, Cal. Civ. Code § 1783, and the UCL has a four-year limit, Cal. Bus. & Prof. Code § 17208.  See Glenn v. Hyundai Motor Am., No. SACV152052DOCKESX, 2016 WL 3621280, at *7–8 (C.D. Cal. 2016) (finding a material conflict of law between California and Texas consumer protection statutes in part because of the difference in the statutes of limitations); see also Kabbash, 2017 WL 2473262, at *4.[4]  Because this difference in statutes of limitations would invalidate a third or half of Ramos's prospective class, it conflicts with California's fundamental policy of protecting customers against "unfair and deceptive business practices" and providing "efficient and economical procedures to secure such protection."  Brazil, 585 F. Supp. 2d at 1165-66 (citing Cal. Civ. Code § 1760).

In oral argument, EBD cited to two cases for the proposition that differences in statutes of limitations do not constitute a conflict in fundamental public policy.  EBD did not cite to these cases anywhere in its motion or reply, and raised its argument regarding the difference in statutes of limitation for the first time at the August 25, 2025 hearing. (See Reply, generally.)  EBD did not provide the Court with a citation for one of the cases.  Further, the Court finds that the second case, Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc., 38 Cal. App. 4th 1532 (1995), is inapposite.  In Hambrecht, the court found that there was "no fundamental state policy against applying a foreign jurisdiction's statute[] of limitation to claims brought within California courts."

---

[4] The Court recognizes that the court in Glenn made this ruling under the governmental interest test because the parties in that case were not subject to a choice-of-law provision.  Glenn, 2016 WL 3621280, at *7–8.  Similarly, in Kabbash, the court considered the difference in statute of limitations while assuming that the choice-of-law provision did not control.  Kabbash, 2017 WL 2473262, at *4. While the court's analysis in these two cases may not be directly on point, the Court still finds the analysis highly persuasive given the current set of facts.  Thus, Glenn and Kabbash are relevant in this context.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |

| | |
|---|---|
| Title | Erika Ramos v. EyeBuyDirect, Inc. |

38 Cal. App. 4th at 1548–49.  However, that case involved a breach of contract claim and the court, in its decision, focused on the fact that parties in California can contract to shorten the statute of limitations for such a claim.  Id. at 1549.  Because Ramos's consumer protection claims implicate a different California public policy regarding consumer protection, the Hambrecht court's reasoning is inapplicable.  Thus, the difference in statutes of limitations between Texas and California conflicts with a fundamental California policy.

c.    Whether California Has a Materially Greater Interest than Texas in the Determination of the Particular Issues of This Case

Finally, the Court must determine which state has a greater interest in the issues of this case.  To determine whether California or Texas has a materially greater interest, the Court must examine: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and, (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties."  Ruiz v. Affinity Logistics Corp., 667 F.3d 1318, 1324 (9th Cir. 2012) (citing 1-800-Got Junk? LLC v. Superior Ct., 189 Cal. App. 4th 500, 513 n.10 (2010), as modified (Nov. 19, 2010)).

EBD argues that California does not have a greater material interest than Texas in this dispute because "EBD, a Texas company, sells its products across the country and reasonably seeks to have its transactions governed with uniformity."  (MTD at 24.)  Thus, Texas has a great "interest in protecting EBD's desire to have its transactions uniformly governed by Texas law."  (Id.)[5]

However, the court in Walter v. Hughes Commc'ns, Inc., rejected this exact argument.  682 F. Supp. 2d 1031, 1042 (N.D. Cal. 2010).  Specifically, the court found the plaintiff's UCL, FAL, and CLRA claims must be governed by California law because California had a stronger interest in protecting its consumers through its chosen statutory

---

[5] The Court notes that EBD also cites to Omstead v. Dell, Inc.,73 F. Supp. 2d 1018 (N.D. Cal. 2007), rev'd, 594 F.3d 1081 (9th Cir. 2010), for support.  (MTD at 24.)  However, in reversing the district court's decision, the Ninth Circuit explicitly stated that California had "a materially greater interest than Texas in applying its own law."  Omstead v. Dell, Inc., 594 F.3d 1081, 1087 (9th Cir. 2010).  Thus, the Court finds EBD's reliance on this case unpersuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |
|----------|------------------------|------|------------------|

| Title | Erika Ramos v. EyeBuyDirect, Inc. |
|-------|-----------------------------------|

scheme. Id. Applying the court's reasoning in Walter, this Court finds that, because the DTPA and California consumer protection laws prohibit the same activity, "[Texas] companies would presumably not be required to alter their behavior to conform to both sets of laws." See id. Texas companies would only need to be mindful that, when acting in California, they are subject to a longer statute of limitations. See id. Thus, because the consumers purchased their products while in California, California has a materially greater interest than Texas in this case. See Kabbash, 2017 WL 2473262, at *5 (holding that, because the policy behind the FLA, CLRA, and UCL is consumer protection, and because the plaintiff was a California consumer, California had a greater interest in protecting the plaintiff).[6] The choice-of-law provision should not be enforced, and California law governs this dispute.

The Court must now determine whether Ramos's claims survive Rule 12(b)(6)'s pleading standard.

3. *Rule 12(b)(6)*

a. Ramos's California Law Claims

EBD argues that Ramos's California law claims must fail. (MTD at 7.) The Court considers each of EBD's arguments in turn.

i. *Voluntary Payment Doctrine*

First, EBD argues that the voluntary payment doctrine bars Ramos's claims for monetary relief. (MTD at 10.) The voluntary payment doctrine prevents recovery of payments voluntarily made with knowledge of the facts. Western Gulf Oil Co. v. Title Ins. & Trust Co., 92 Cal. App. 2d 257, 266 (1949).

---

[6] EBD attempts to distinguish Kabbash from the present case because, in Kabbash, the defendant did not object to the application of California law at the motion to dismiss stage. 2017 WL 2473262, at *5. (MTD Reply, at 21.) However, the court in Kabbash did not base its finding that California had a materially greater interest than Texas solely in this fact. Id. Thus, the Court finds this argument unpersuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |

| | |
|---|---|
| Title | Erika Ramos v. EyeBuyDirect, Inc. |

EBD focuses on the fact that customers made the payments voluntarily because they were not under "duress, coercion, or compulsion." (MTD at 10 (citing <u>Steinman v. Malamed</u>, 185 Cal. App. 4th 1550, 1558 (2010).) However, even if the payment was made voluntarily, Ramos has adequately pled that the payments were made without full knowledge of the facts. EBD states that it "fully disclosed" the Shipping Insurance costs "in close proximity" to the "free shipping" representation, and at each step of the checkout process, and with the option to opt-out. (<u>Id.</u>; Reply at 8.) However, Ramos has alleged that she was not aware that the fee was optional, and that she was confused by the different names for the fee—"Shipping Protection" and "Shipping Insurance." (<u>See</u> FAC ¶¶ 14, 35.) Consequently, because Ramos has alleged that she and other customers did not have full knowledge of the facts surrounding the payment, the voluntary payment doctrine does not bar her claims.

ii.    *Reasonable Consumer Standard*

Next, EBD argues that Ramos's claims fail because she cannot alleged that EBD's conduct was likely to deceive a reasonable consumer. (MTD at 11.)

The CLRA, UCL, and FAL require plausible allegations that the labeling or advertising at issue is "likely" to deceive a "reasonable consumer." <u>See</u> <u>Williams v. Gerber Prods.</u>, 552 F.3d 934, 938 (9th Cir. 2008) (noting that appellant's claims under the UCL, FAL, and CLRA are "governed by the 'reasonable consumer' test"); <u>Consumer Advocates v. Echostar Satellite Corp.</u>, 113 Cal. App. 4th 1351, 1360 (2003) (concluding that the "reasonable consumer" standard applies to the CLRA in addition to the UCL and FAL); <u>Becerra v. Dr Pepper/Seven Up, Inc.</u>, 945 F.3d 1225, 1228 (9th Cir. 2019). This standard requires more than a mere possibility that a product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." <u>Lavie v. Procter & Gamble Co.</u>, 105 Cal. App. 4th 496, 508 (2003). Instead, a plaintiff needs to plead there is a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." <u>Id.</u> Generally, the issue of whether a business practice is deceptive is a fact question that cannot properly be resolved on a motion to dismiss. <u>Williams</u>, 552 F.3d at 938.

According to EBD, because the "Shipping Insurance" fee is "sufficiently conspicuous," separate and itemized, and exists on all three steps of the checkout process, a reasonable consumer would not miss this fee or believe it was "hidden."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |

| Title | Erika Ramos v. EyeBuyDirect, Inc. |

(MTD at 12.)  First, the "Tax and Shipping Protection not included" language is found directly below the "free shipping" representation, in similar size font and style.  (Id. at 12–13.)  Further, by the plain terms of the phrase, "Shipping Protection" is not a delivery fee.  (Id. at 13.)  Thus, EBD argues that no reasonable consumer would see the "Shipping Protection" fee as a "disguised shipping charge," or believe that the "free shipping" representation included Shipping Protection.  (Id. at 12–13.)  Second, the "Shipping Protection" fee is itemized and separated from the total purchase price on every page of the checkout flow, and "EBD did not hide the insurance charge at checkout under any other name or guise."  (Id.)  Thus, EBD argues that "[n]o reasonable consumer could miss this charge."  (Id. at 12.)  Fourth, EBD claims that no reasonable consumer would find that the fee is "mandatory" because the toggle option for adding Route+ Shipping Protection allows customers to opt-out.  (Id. at 14.)

Finally, EBD claims that Ramos's "junk fee" argument has no merit.  (MTD Reply, at 14.)  Although Ramos claims that major shipping carriers automatically protect shipments up to $100, (FAC ¶ 36), Ramos does not allege that her purchase was less than $100.  (MTD Reply, at 14–15.)  In fact, EBD typically only provided free shipping on purchases over $100.  (Id. at 15; FAC ¶ 13.)  Thus, shipping carriers likely would not have covered the full value of Ramos's order.  (Id.)  Further, Ramos does not allege that shipping carriers provide protection for theft after delivery.  (Id.)  In contrast, the Shipping Protection expressly covered theft after delivery.  (Id.)  Consequently, EBD argues that no reasonable consumer would believe that the "Shipping Protection" fee serves no purpose.  (MTD at 13.)

EBD cites to a few cases in which courts in the Ninth Circuit found that the pricing disclosed before the customer committed to the purchase was not deceptive.  (Id. at 14.)  First, in Harris v. Las Vegas Sands L.L.C., the plaintiff booked a hotel reservation through a website which listed the "Grant Total" in 8.5-point font and, stated "*Total does not include applicable daily resort fee of $20 plus tax" immediately below in 7-point font.  No. CV 12-10858 DMG FFMX, 2013 WL 5291142, at *2 (C.D. Cal. 2013).  The court found that the "Grand Total" was not misleading because it was followed by a noticeable caveat and, thus, "no reasonable consumer could be misled." Id. at *5–6.  Therefore, the court granted the motion to dismiss the plaintiff's CLRA, FAL, and UCL claims.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | 8:25-cv-00539-JVS-DFM | Date   August 27, 2025 |

| | |
|---|---|
| Title | Erika Ramos v. EyeBuyDirect, Inc. |

Similarly, in <u>Charbonnet v. Omni Hotels & Resorts</u>, the court found that a reasonable customer was unlikely to be deceived by additional hotel fees because "the total price is disclosed to the consumer before they even click 'Reserve' to take the first step toward booking a room." No. 20-CV-01777-CAB-DEB, 2020 WL 7385828, at *3 (S.D. Cal. 2020). Finally, in <u>Ford v. Hotwire, Inc.</u>, the plaintiff brought an action against the website that he used to book his hotel because the hotel charged him an additional resort fee upon checkout. No. 07-CV-1312HNLS, 2008 WL 5874305, at *2 (S.D. Cal. 2008). The court found that a reasonable consumer was not likely to be deceived because the website's Terms of Use stated that the fees charged by the website did not include additional fees that may be charged by the hotel at checkout. <u>Id.</u> at *2–4.

According to EBD, Ramos's claims are even less plausible than the claims in <u>Harris</u> and <u>Ford</u>. (MTD at 15.) Specifically, unlike in <u>Harris</u> and <u>Ford</u> where the resort fees were not included in the final order total, the "Shipping Protection" fees were disclosed to Ramos "immediately" and throughout the checkout process. (<u>Id.</u>)

In response, Ramos claims that the fee was deceptive because it was first added to her cart without any action on her part. (MTD Opp'n at 5–6.) Although it could have later been removed, the automatic additional of the fee "forced customers to hunt for a way to remove it." (<u>Id.</u> at 6 (emphasis omitted).) Further, Ramos claims that EBD's alleged deception kept customers from finding a way to remove the fee. (<u>Id.</u>) For example, while the webpage does contain a disclaimer—"Tax and Shipping Protection not included"—that page of the website does not describe what Shipping Protection is. (<u>Id.</u>; FAC ¶ 10.) Further, the added fee is then termed "Shipping Insurance" not "Shipping Protection," and is automatically added to the order total without the customer taking any action. (<u>Id.</u>; FAC ¶ 12.) The page on which the "Shipping Insurance" is added does not provide the customer with the option to remove it and does not describe what "Shipping Insurance" is, or whether it is the same as "Shipping Protection." (<u>Id.</u>; FAC ¶ 12.) While "Shipping Insurance" is added on this portion of the checkout screen, taxes are not. (<u>Id.</u>) Finally, the third checkout screen provides a toggle option to remove "Shipping Protection" but does not explain that this is the same as the "Shipping Insurance" which has already been added to the cart. (<u>Id.</u>) Ramos also argues that "[t]here is no obvious indication that the checkmark can be removed or turned off." (<u>Id.</u>) Finally, the fourth page of the checkout process includes the "Shipping Insurance" fee with no option to remove it, and no explanation as to whether this is the same as "Shipping Protection." (<u>Id.</u> at 6–7.) Thus, Ramos concludes that EBD's website

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:25-cv-00539-JVS-DFM                      Date    August 27, 2025

Title    Erika Ramos v. EyeBuyDirect, Inc.

checkout process and advertisements for free shipping are "designed to confuse and mislead the public" into paying excess "Shipping Protection" fees.  (Id. at 11.)

The Court finds Ramos's arguments that there is "no obvious indication that the checkmark can be removed or turned off," (id. at 6), and that "Shipping Protection" serves no additional purpose, (id. at 10), to be unpersuasive.  First, the toggle to opt-out of "Shipping Protection" is blue and conspicuous to a reasonable consumer.  Given that many websites utilize similar toggle options, a reasonable consumer was likely to understand that the toggle can be turned off.  Further, the Court agrees with EBD that "Shipping Protection" likely provides additional protection not offered by general mail carriers.

However, the Court is convinced that a reasonable consumer would not have been aware that "Shipping Insurance" is optional, and would have been confused by the use of the terms "Shipping Insurance" versus "Shipping Protection."  Although the website explicitly excluded "Shipping Protection," a reasonable consumer might not have understood this to be the same as "Shipping Insurance."[7]  This is particularly true when the "Shipping Insurance" fee was allegedly added automatically, and before the customer was given the option to opt-out of "Shipping Protection."  Further, even if a consumer did understand "Shipping Insurance" and "Shipping Protection" to mean the same thing, a reasonable consumer may still have thought the charge was mandatory given the automatic addition of the charge and the fact that it was first discussed in combination with "taxes," which are mandatory.  Thus, Ramos has plausible alleges that a reasonable consumer was likely to be deceived.

    iii.    *Whether Ramos Plausibly Alleges Reliance*

---

[7] At oral argument EBD claimed that, pursuant to McGinity v. Procter & Gamble Co., 69 F.4th 1093, 1097–99 (9th Cir. 2023), a reasonable consumer should be expected to conduct further research into what "Shipping Protection" is by clicking on the question mark icon next to the toggle, clicking the toggle and seeing if "Shipping Insurance" disappeared, or referring to the Terms of Use or Frequently Asked Questions ("FAQs").  In McGinity, the court held that when "a front label is ambiguous, the ambiguity can be resolved by reference to the back label."  69 F.4th at 1099.  However, a reasonable consumer using the EBD website would have to conduct more extensive investigation than simply flipping a product over to read the back label.  Thus, the McGinity court's analysis does not control.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:25-cv-00539-JVS-DFM                     Date    August 27, 2025

Title    Erika Ramos v. EyeBuyDirect, Inc.

To bring a UCL, FAL, and CLRA claim, a plaintiff must allege some form of
actual reliance.  Clark v. Perfect Bar, LLC, 816 F. App'x 141, 142 (9th Cir. 2020).
"Reliance is adequately pled when a plaintiff specifies which statements the plaintiff
relied on and alleges that the plaintiff would not have purchased the product absent the
misrepresentation."  Nadler v. Nature's Way Prods., LLC, No. EDCV13100TJHOPX,
2014 WL 12601567, at *3 (C.D. Cal. 2014) (citation omitted).

EBD claims that Ramos has not plausibly alleged that she actually relied on the
purported misrepresentations in the use of EBD's website or in paying the "Shipping
Protection" fees.  (MTD at 16.)  First, EBD argues that no reasonable consumer would
have missed the "Shipping Insurance" fee or thought that the fee was mandatory.  (Id. at
16–17.)  Second, EBD claims that "it is not justifiable to rely on 'free shipping'
representation regarding delivery and conclude that other additional services, such as
insurance, are also free."  (Id. at 17.)  EBD again points to the fact that the website
specifically disclosed that "Shipping Protection" was not included in the "free shipping"
representation.  (Id.)  Finally, EBD claims that a reasonable consumer would understand
that the "Shipping Insurance" fee was an additional insurance cost and was optional.  (Id.
at 18–19.)

EBD's arguments seem to mirror its arguments regarding the reasonable consumer
test, which this Court already rejected.  As stated above, the Court finds that a reasonable
consumer could have misunderstood that the fee was optional.  Because Ramos may
have removed the additional fee absent EBD's representations, she has plausibly alleged
reliance.

      iv.    *Whether Ramos Pled Fraud With Particularity*

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead each element of
a fraud claim with particularity, i.e., the plaintiff "must set forth more than the neutral
facts necessary to identify the transaction."  Cooper v. Pickett, 137 F.3d 616, 625 (9th
Cir. 1997) (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d
1541, 1548 (9th Cir. 1994)).  A fraud claim must be accompanied by "the who, what,
when, where, and how" of the fraudulent conduct charged.  Vess v. Ciba-Geigy Corp.
USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper, 137 F.3d at 627).  "A
pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud
so that a defendant can prepare an adequate answer from the allegations."  Moore v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |
|---|---|---|---|

| Title | Erika Ramos v. EyeBuyDirect, Inc. |
|---|---|

Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).  Statements of the time, place, and nature of the alleged fraudulent activities are sufficient, but mere conclusory allegations of fraud are not.  Id.  Furthermore, though allegations based on information and belief are usually insufficient, in circumstances of corporate fraud, this rule may be relaxed as to matters within the opposing party's knowledge.  Id.  "To plead the existence of an omission sufficient to support a fraudulent concealment claim, a plaintiff 'must describe the content of the omission and where the omitted information should or could have been revealed.'"  In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig., 483 F.Supp.3d 838, 846 (C.D. Cal. 2020) (citing Tapia v. Davol, Inc., 116 F.Supp.3d 1149, 1163 (S.D. Cal. 2015)).

In claiming that Ramos has failed to meet the heightened pleading standard for a fraud claim, EBD again argues that Ramos does not identify "any specific misrepresentations made by EBD regarding the total costs at checkout."  (MTD at 20.) EBD merely repeats the arguments that it already made in its discussion of the heightened pleading standard.  Because this Court has already determined that Ramos adequately pled her CLRA, FAL, and UCL claims, EBD's argument necessarily fails. Further, Ramos has clearly alleged the who (EBD), what (alleged misrepresentations of "free shipping" and confusing, pre-added "Shipping Insurance" and "Shipping Protection" fees), when (as customers navigate through the checkout flow), where (on EBD's website), and how (through various representations and the automatic adding of fees).  Thus, the Court declines to dismiss Ramos's claims on this basis.

The Court **DENIES** the motion to dismiss Ramos's CLRA, FAL, and UCL claims.

b.    Ramos's Breach of Contract Claim

In California, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).  In order to plead the existence of a contract, a claimant must sufficiently plead the contract, either "by its terms, set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference, or by its legal effect."  N. Cnty. Commc'ns Corp. v. Verizon Global Networks Inc., 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (quoting McKell v. Washington Mut. Inc., 142 Cal. App. 4th 1457, 1489 (2006).  "At a minimum,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |
|---|---|---|---|

| Title | Erika Ramos v. EyeBuyDirect, Inc. |
|---|---|

the complaint must identify the specific provision of the contract allegedly breached by the defendant." <u>A.B. Concrete Coating Inc. v. Wells Fargo Bank, National Ass'n</u>, 491 F. Supp. 3d 727, 735 (E.D. Cal. 2020) (internal citation and quotations omitted) (cleaned up).

EBD claims that Ramos cannot assert a breach of contract claim because she has not identified a contract that EBD has allegedly breached. (MTD. at 7–8.) In response, Ramos argues that her breach of contract claim is simple:

> [Ramos] agreed to purchase prescription eyewear from EBD by affirmatively adding items to her online shopping cart. She did not contract to purchase Shipping Protection. Nevertheless, EBD snuck Shipping Protection into her online shopping cart, and charged her for it. In so doing, it breached the contract between the parties.

(MTD Opp'n at 17.)

EBD relies on <u>Frezza v. Google Inc.</u>, No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013), for the contention that a "free shipping" advertisement is not an offer of a contract. (MTD at 25.) However, the <u>Frezza</u> court also recognized that an advertisement could form the basis of a contract if a party renders performance. <u>Id.</u> at *3. Here, EBD offered free shipping and actually rendered performance by excluding standard shipping costs from Ramos's total at checkout. Ramos accepted the offer by proceeding through checkout. However, EBD then added additional "Shipping Protection" fees to Ramos's sub-total, allegedly in violation of its offer for free shipping. The Court finds that this is sufficient to plead the existence, and breach, of a contract.

Consequently, the Court **DENIES** the motion to dismiss Ramos's breach of contract claim.

c.    <u>Ramos's Unjust Enrichment Claim</u>

EBD argues that Ramos's unjust enrichment claim must fail because it is based on the same set of facts as her other claims which, according to EBD, must also fail. (MTD at 8.) Because the Court declines to dismiss most of Ramos's other causes of action, it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:25-cv-00539-JVS-DFM                    Date    August 27, 2025

Title    Erika Ramos v. EyeBuyDirect, Inc.

also declines to dismiss her unjust enrichment claim, which she is allowed to plead in the alternative.

The Court **DENIES** the motion to dismiss Ramos's unjust enrichment remedy.

d.    <u>Ramos's Request for Injunctive Relief</u>

EBD claims no injunctive relief is warranted because there is no likelihood of future injury to Ramos or the putative class. A plaintiff seeking equitable relief must "demonstrate a likelihood of future injury," meaning that she is "realistically threatened by a repetition of the violation." <u>Wang v. OCZ Tech. Grp., Inc.</u>, 276 F.R.D. 618, 626 (N.D. Cal. 2011) (citing <u>Hodgers–Durgin v. De La Vina</u>, 199 F.3d 1037, 1039 (9th Cir. 1999); <u>Gest v. Bradbury</u>, 443 F.3d 1177, 1181 (9th Cir. 2006)). "Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury." <u>Id.</u> (citing <u>Hodgers-Durgin</u>, 199 F.3d at 1044–45).

EBD claims that Ramos has not alleged a likelihood of future harm because she is now aware of the shipping fee, and the fact that it is optional, and cannot be deceived again. (MTD at 26–27.) In response, Ramos relies on <u>Davidson v. Kimberly-Clark Corp.</u>, 889 F.3d 956, 969–70 (9th Cir. 2018), in which the Ninth Circuit held that a plaintiff who has previously been deceived has standing to seek injunctive relief because she faces imminent threat of future harm by "continu[ing] to desire to purchase" the defendant's products, but being unable to because she can no longer rely on the defendant's advertising. (MTD Opp'n at 20.) Thus, injunctive relief is available to a consumer who "knows or suspects that the advertising was false at the time of the original purchase" because "knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." <u>Id.</u> at 969.

However, the Court agrees with EBD that <u>Davidson</u> is distinguishable from the present case. (MTD Reply, at 23.) In <u>Davidson</u>, the plaintiff faced the threat of being similarly deceived in the future by the defendant's representations that its wipes were "flushable," and being unable to purchase the wipes as a result. <u>Id.</u> at 971–72. However, now that Ramos is aware of the included "Shipping Insurance" fee and the ability to opt-out, she does not risk being harmed by the fee again. In fact, Ramos would now know to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | Date | August 27, 2025 |
|---|---|---|---|

| Title | Erika Ramos v. EyeBuyDirect, Inc. |
|---|---|

click the toggle on the third page of the check-out process to opt herself out of the fee. Thus, there is no risk of future harm.

Accordingly, the Court **GRANTS** the motion to dismiss the injunctive relief request, without leave to amend.

4.    *Motion to Strike Class Allegations*

Ramos defines the proposed class as: "All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid a Shipping Protection fee or other similar fee for a purchase on EBD." (Id. ¶ 50.) According to Ramos, the class consists of common legal and factual questions, including: "Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers," (id. ¶ 54(a), "[w]hether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted," (id. ¶ 54(b)), and "[w]hether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein." (id. ¶ 54(h)). Ramos also proposes a California subclass. (Id. ¶ 51.)

EBD moves to strike Ramos's putative nationwide class on the grounds that a nationwide class cannot be certified given the conflicts of law between states, and that this Court lacks jurisdiction over out-of-state class members with no connection to California. (MTS at 2.) The Court finds each of these arguments unpersuasive.

First, EBD relies on the Ninth Circuit's holding in Mazza v. American Honda Motor Co., Inc., 666 F.3d 581 (9th Cir. 2012), for the contention that conflicts of law between states precludes the certification of a nation-wide class. (MTS Mem. in Supp., Dkt. No. 23-1, 12.) However, Mazza is distinguishable from this case because Mazza involved a motion for class certification and not a motion to strike class allegations. Id. at 585. Moreover, courts in the Ninth Circuit still regularly decline to strike nationwide class allegations prior to class certification despite Mazza. See Wolf v. Hewlett Packard Co., No. CV1501221BROGJSX, 2016 WL 8931307, at *8 (C.D. Cal. 2016) (collecting cases). Additionally, EBD has failed to convince the Court that the potential differences in state laws are so material this is "the rare case where the pleadings indicate that the class requirements cannot possibly be met." Kazemi v. Payless Shoesource Inc., No. C 09-5142 MHP, 2010 WL 963225, at *3 (N.D. Cal. 2010). This is particularly true given

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:25-cv-00539-JVS-DFM                    Date    August 27, 2025

Title    Erika Ramos v. EyeBuyDirect, Inc.

that Ramos's nation-wide class allegations apply only to her breach of contract and unjust enrichment claims. Because EBD only presented its choice of law arguments in relation to Ramos's California law claims, (see MTD at 21), this Court has yet to engage in a meaningful choice-of-law analysis regarding the nation-wide claims at issue. Further, because this Court dismissed Ramos's breach of contract claim with leave to amend, it is premature to decide whether there is a conflict of law under this cause of action. Thus, while EBD has identified potential difficulties that Ramos may face in pursuing class certification, it has not demonstrated that class certification is not possible.

Second, EBD argues that, under Bristol-Myers Squib Co. v. Superior Court of Cal., 137 S. Ct. 1773, 1780-81 (2017), this Court lacks jurisdiction over EBD with respect to claims of non-resident plaintiffs with no contacts in California. (MTS Mem. in Supp., at 18.) In Bristol-Myers, the Supreme Court held that a California state court could not exercises specific personal jurisdiction over the claims of out-of-state, named plaintiffs against an out-of-state defendant where the only connections between the Plaintiffs' claims and the defendant's conduct arose in connection with other named plaintiffs' claims. Id.

EBD attempts to overextend Bristol-Myers's holding. First, Bristol-Myers concerned the state-law claims of named, out-of-state plaintiffs bringing suit in California state court. See id. at 1777. Second, the case was not a class action, but rather a mass tort action. Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc., No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (citing Bristol-Myers Squibb Co. v. Superior Court, 1 Cal. 5th 783, 809 (2016), rev'd by Bristol-Myers, 137 S. Ct. at 1784). These facts distinguish Bristol-Myers from the present case. Dissenting in Bristol-Myers, Justice Sotomayor recognized that the majority did not address the issue presently before this Court, "whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." Bristol-Myers, 137 S. Ct. at 1789 n.4. Accordingly, the Court is not convinced that it must strike Ramos's class allegations at this stage when the Supreme Court itself cautioned that "since [its] decision concerns the due process limits on the exercise of specific jurisdiction by a State, [it] leave[s] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Id. at 1783–84.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:25-cv-00539-JVS-DFM                    Date  August 27, 2025

Title  Erika Ramos v. EyeBuyDirect, Inc.

The Court recognizes that district courts have adopted different interpretations of the Bristol-Myers's holding.  Some district courts have declined to strike class allegations, see, e.g., Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc., No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017), and to grant motions to dismiss for lack of personal jurisdiction, see, e.g., Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prods., Inc.,No. CV 17-2161, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018); In re Chinese-Manufactured Drywall Prod. Liab. Litig., No. MDL 09-2047, 2017 WL 5971622, at *22 (E.D. La. Nov. 30, 2017), based on Bristol-Myers, where the named plaintiffs are residents of the forum state and seek to represent nationwide classes.  Others have held that Bristol-Myers requires the dismissal of claims on behalf of prospective non-resident class members where the court only exercises specific jurisdiction over the defendant based on the resident-plaintiffs' claims.  See, e.g., DeBernardis v. NBTY, Inc., No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018); McDonnell v. Nature's Way Prod., LLC, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017).  Nevertheless, the Court finds more persuasive those cases who have heeded the Supreme Court's own statement and recognized that Bristol-Myers's holding is limited to its facts.

In response, EBD argues that, even if the court does not find Bristol-Myers persuasive, the Court still should not "ignore [EBD]'s due process rights and address the issue of personal jurisdiction at a later stage."  (MTS Reply, at 15.)  However, the Court sticks to the principle that, while class allegations can be stricken prior to a motion for class certification, that is an exception rather than the rule.  See Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245-46 (C.D. Cal. June 30, 2011) (collecting cases).  Deciding whether the alleged classes can be maintained is properly done on a motion for class certification because at that point "the parties have had an opportunity to conduct class discovery and develop a record."  Shein v. Canon U.S.A., Inc., 2009 WL 3109721, at *10 (C.D. Cal. Sept. 22, 2009).  Accordingly, the Court declines to strike the class allegations.

The Court concludes that it is premature to strike the nationwide class and so **DENIES** EBD's motion to strike the nationwide classes.

**IV. CONCLUSION**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-00539-JVS-DFM | | Date | August 27, 2025 |
|---|---|---|---|---|
| Title | Erika Ramos v. EyeBuyDirect, Inc. | | | |

     For the foregoing reasons, the Court **GRANTS** the motion to dismiss Ramos's request for injunctive relief, without leave to amend.  Further, the Court **DENIES** the motion to dismiss Ramos's CLRA, FAL, UCL, breach of contract, and unjust enrichment claims.  Finally, the Court **DENIES** the motion to strike.

     **IT IS SO ORDERED.**